UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| DEON DOLEMAN, ) | |
| ) | |
| Plaintiff, ) | Civil. No.: 5:20-cv-000431-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL ) | **&** |
| SECURITY, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Deon Doleman seeks judicial review of an administrative law judge's decision to deny him Supplementary Security Income benefits. Mr. Doleman brings this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), alleging error on the part of the ALJ in considering this matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Doleman's Motion for Summary Judgment [R. 15-2] and **GRANT** the Commissioner's [R. 17.]

**I**

**A**

Plaintiff Deon Doleman initially filed an application for Title XVI Supplemental Security Income on July 16, 2018, alleging disability beginning that same day. [R. 11-1 at 16.] That claim was denied on January 29, 2019, and Mr. Doleman thereafter filed a written request for a hearing pursuant to 20 C.F.R. § 416.1429. *Id.* At that hearing, Mr. Doleman testified to his lifestyle, his work history, and his history with bilateral club feet. *Id.* 34-42. ALJ Thomas Henderson denied Mr. Doleman's claim once more on February 13, 2020, after concluding that

Mr. Doleman was not disabled as defined by the Social Security Act. *Id.* at 26. The Appeals Council denied review on August 26, 2020, rendering the ALJ's decision final. [R. 15-2 at 1.]

To evaluate a claim of disability under Title XVI, an ALJ conducts a five-step analysis. First, if a claimant is doing substantial gainful activity, he is not disabled. *See* 20 C.F.R. § 416.920(a). If the individual is not engaged in substantial gainful activity, the analysis moves to the second step. Second, if a claimant does not have a severe medically determinable impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, then he is not disabled. *See* 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. *See* 20 C.F.R. § 416.920(d); 20 C.F.R. § 416.925; 20 C.F.R. § 416.926. Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945.

Fourth, an ALJ considers a claimant's RFC and past relevant work, and if the claimant is still able to do his past relevant work, he is not disabled. *See* 20 C.F.R. § 416.920(f). Fifth, if an ALJ assesses a claimant's RFC in conjunction with his age, education, and work experience and finds that the claimant cannot adjust to other work available in significant numbers in the national economy, then the claimant is disabled. *See* 20 C.F.R. § 416.920(g); 20 C.F.R. § 416.912; 20 C.F.R. § 416.960(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc.*


*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 416.912(a)(1).  At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity.  *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008); 20 C.F.R. § 416.912(b)(3).

At step one, the ALJ determined that Mr. Doleman had not engaged in substantial gainful activity since July 16, 2018, the date of his SSI application.  [R. 11-1 at 18.]  And at step two, the ALJ found Mr. Doleman's bilateral clubbed feet to be a severe impairment.  *Id.* at 19.  At step three, however, the ALJ determined that Mr. Doleman did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  At step 4, the ALJ found Mr. Doleman to have a RFC which permits him "to perform the full range of sedentary work as defined in 20 C.F.R 416.967(a)."  *Id.* at 20.  Consequently, at step 5, through consideration of Mr. Doleman's age, education, work experience, and RFC, ALJ Henderson determined that there exists a significant number of jobs in the national economy that Mr. Doleman can perform.  *Id.* at 25.  Accordingly, the ALJ determined Mr. Doleman to not be disabled as defined by the Social Security Act and there ineligible for SSI.  *Id.* at 26.

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y*

*of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983)). A reviewing court, however, may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); see also *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

### A

Mr. Doleman first argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate medical opinion evidence as required by 20 C.F.R. § 416.920(c). [R. 15-2 at 13-14.[1]] Mr. Doleman's primarily contention is that that the ALJ inappropriately gave Dr. Anthony Karam's opinion more weight than the medical opinions of

---

[1] Though Mr. Doleman cites "20 C.F.R 404.920c," this regulation does not exist. The Court surmises that Plaintiff intended to reference 20 C.F.R. § 416.920c, which governs considerations and articulations of medical opinions. [*See* R. 15-2 at 14.]

4

Drs. Joseph Skurka and Mohammad Shahzad.  [*See* R. 15-2 at 14.]  In his medical opinion, Dr. Karam generally indicated that Mr. Doleman had no abnormality in gait, station, range of motion, or strength.  [R. 15-2 at 14.]  Conversely, the opinions of Drs. Skurka and Shahzad indicated that Mr. Doleman's condition rendered his ability to work severely limited.  [*See* R 11-1. at 24.]  Upon review, the ALJ found portions of each opinion persuasive, but relied heavily on the opinion of Dr. Karam, whose opinion the ALJ determined to be the most consistent with other evidence in this matter.  [*See* R. 17 at 9; Tr. at 24-25.]  Nonetheless, because the ALJ did not rely equally on the medical opinions that differed from Dr. Karam's opinion, Mr. Doleman argues that he departed from "supportability and consistency," the "most important factors" considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings.  [*See* R. 15-2 at 14 (discussing 20 C.F.R. § 416.920(c)).]

 In opposition, the Commissioner argues that the ALJ reasonably considered the prior administrative medical findings and the medical opinions of each doctor.  [R. 17 at 8.]   First, the Commissioner explains that the ALJ found Dr. Karam's opinion most persuasive because Dr. Karam's opinion was consistent with the x-rays provided in this matter and with the opinion of podiatrist Dr. Skurka, who "merely found a gait abnormality that he addressed by advising Plaintiff about custom shoes, orthotics, and how to mechanically stabilize and offload."  *Id*.  Next, the Commissioner argues that the evidence Mr. Doleman references in support of his position is not persuasive in this matter because, the ALJ's finding is supported by more than a mere scintilla of evidence.  *Id.* at 9-10 (citing *Her*, 203 F.3d 388-89 ("[E]ven if the evidence could also support a different conclusion, the decision of the [ALJ] must stand if substantial evidence supports the conclusion reached.")).

5

The Commissioner is correct. First, the Court agrees that the ALJ properly examined the supporting medical evidence and consistency of each medical opinion. [R. 11-1 at 22.] First, the ALJ analyzed the opinion of Dr. Skurka. During his appointments with Dr. Skurka, Mr. Doleman indicated that he was not experiencing pain in his feet and was simply counseled on foot care and appropriate footwear. *Id.* Next, the ALJ analyzed the report of Dr. Karam. During his appointments with Dr. Karam, Mr. Doleman reported that his feet caused him pain when standing or walking for long periods of time. [R. 11-1 at 306.] But Mr. Doleman also reported that he was not on any medication or receiving any type of treatment. *Id.* Ultimately, Dr. Karam concluded that Mr. Doleman's gait was normal and that he could stand stable and ambulate without the use of an assistive device. *Id.* Finally, the ALJ reviewed the medical report of Dr. Mohammad Shahzad, who recommended Mr. Doleman receive full disability because Mr. Doleman indicated that he had been experiencing "pain in [his] feet" for over a year at a pain level of nine out of ten. [*See* R. 11-1 at 24, 338.]

Having reviewed the reports of each doctor, the ALJ concluded that Mr. Doleman had not experienced a loss of function. [R. 11-1 at 24-26.] In reaching this conclusion, the ALJ relied heavily on the opinion of Dr. Karam, whose opinion he found to be supported by x-rays in evidence and by the examinations of other providers. *Id.* Nonetheless, the ALJ explained that he still took into consideration the reports of Dr. Skurka and Dr. Shazad in forming his final opinion. Consequently, because the ALJ explained the basis upon which he formed his conclusion and because an ALJ's determination process permits flexibility for an ALJ to "not defer or give any specific evidentiary weight […] to any medical opinion," the Court finds that the ALJ in this matter committed no reversable error. 20 C.F.R. § 416.920c(a); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination."). Though Mr. Doleman urges the Court to make its own credibility determination of the persuasiveness of the medical opinions in the Record, the role of making credibility determinations in this matter is assigned to the ALJ and the Court is not conducting a *de novo* review. Moreover, even if the Court believed that analysis of facts in the record could have led to an alternative result, the ALJ's decision was based on substantial evidence and is therefore guaranteed affirmation.

**B**

Mr. Doleman's second contention is that the ALJ failed to perform a function-by-function assessment of his RFC. According to Mr. Doleman, this failure occurred because the ALJ never stated how much standing and walking that he could perform. Similarly, Mr. Doleman alleges that the ALJ failed to explain how his RFC findings were supported by evidence, failed to explain which portions of Mr. Doleman's testimony were inconsistent, and improperly analyzed vocational testimony. [R. 15-2 at 9-13.]

An RFC Assessment is a "function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 SSR LEXIS 5 (S.S.A. July 2, 1996). In determining a claimant's RFC, an ALJ is required to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling), and non-exertional (manipulative, postural, visual, communicative, and mental functions) capacities. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam). While SSR 96-8p requires a function-by-function analysis, the Sixth Circuit has held that "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Id.* In other words, "the ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate

how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3rd Cir. 2000)). Additionally, while a function-by-function analysis is desirable, there is no requirement that the ALJ produce a statement in writing. *Id.*

In this matter, as discussed previously, the ALJ discussed his considerations of the medical evidence in relation to Plaintiff's ability to stand and walk, and explained his determination of Plaintiff's RFC. Though Mr. Doleman appears to assert that the ALJ's RFC findings are inconsistent with medical evidence in this matter, the Court has already determined that the ALJ's conclusions were based on substantial evidence. The Court notes, however, that the ALJ's RFC determination is wholly consistent with Mr. Doleman's own allegations. For example, Mr. Doleman alleges that he has a difficult time standing and walking for long periods of time and that he has presented medical evidence in support. [*See* R. 15-2 at 3.] But, in his opinion, the ALJ agrees that Mr. Doleman would likely have trouble standing and walking. [R. 11-1 at 25 (indicating that the ALJ's RFC determination was based, in part, on "objective medical evidence that supports limitations in the claimant's ability to stand and/or walk for extended periods of time.").] Even taking Mr. Doleman's limitations in consideration, however, the ALJ concluded that Mr. Doleman had an RFC for a full range of sedentary work and was therefore not disabled. *See id.* Accordingly, because the ALJ explained his decision-making process and took into consideration all relevant evidence in the Record, including the evidence Mr. Doleman alleges to weigh in favor of finding him disabled, the ALJ performed an appropriate function-by-function analysis.

## C

Finally, Mr. Doleman argues that the ALJ erred by not requiring vocational testimony that a significant number of jobs exist in the national economy that Mr. Doleman could perform. Mr. Doleman, however, does not cite any law that indicates that vocational testimony is required to be analyzed. [*See* R. 15-2 at 2, 8.] Conversely, the Commissioner cites controlling authority that indicates the ALJ did not commit reversable error. [R. 17 at 13-14.]

When considering potential vocational capabilities, an ALJ assesses individual abilities and then determines whether jobs exist that a person having the claimant's qualifications could perform. *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). The burden in this determination can be satisfied by relying on the Medical-Vocational Guidelines. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680 (6th Cir. 1992). In the first part of the inquiry, a hearing "afford[s] claimants ample opportunity both to present evidence relating to their own abilities and to offer evidence that the [Medical-Vocational Guideline rule] do[es] not apply to them." *Heckler*, 461 U.S. at 467. If an ALJ determines from the evidence presented that the vocational guidelines do apply, then the ALJ uses the guidelines to determine the types and number of jobs that exist for the claimant in the national economy. *Id.* at 468. Indeed, "this type of general factual issue may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing." *Id.* More clearly, when an ALJ determines that the vocational guidelines apply, he may rely on the guidelines rather than introducing the testimony of a vocational expert. *Id.*

In this matter, because Mr. Doleman had ample opportunity to be heard and present evidence at his administrative hearing, the ALJ was properly permitted to rely on the Medical-Vocational Guidelines instead of eliciting testimony from a vocational expert. *See Heckler*, 461

U.S. at 468. And, directed by Medical-Vocational Rule 201.24, the ALJ determined that Mr. Doleman was not disabled and was able to perform certain occupations available in the national economy. [R. 11-1 at 26.] Accordingly, because the ALJ properly relied on vocational guidelines, he did not err by failing to hear vocational expert testimony.

### III

Upon review of this matter, the Court concludes that the ALJ did not commit reversable error. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Deon Doleman's Motion for Summary Judgment **[R. 15-2]** is **DENIED**,

2. The Acting Commissioner's Motion for Summary Judgment **[R. 17]** is **GRANTED**;

3. Judgment in favor of the Commissioner will be entered promptly.

This is the 11th day of November, 2021.

Gregory F. Van Tatenhove
United States District Judge